# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| KDI DISTRIBUTION, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES<br><br>Defendant. | Case No. 08-550T<br><br>Judge Robert H. Hodges, Jr. |

## MEMORANDUM IN OPPOSITION TO KDI DISTRIBUTION, INC.'S RCFC 40.2 NOTICE OF DIRECTLY RELATED CASES AND MOTION TO CONSOLIDATE

Locus Telecommunications, Inc, ("Locus") submits this Memorandum in Opposition to the RCFC 40.2 Notice of Directly Related Cases and Motion to Consolidate submitted on behalf of KDI Distribution, Inc. d/b/a Krossland Communications ("KDI") and respectfully requests the Court deny KDI's Motion as consolidation would unjustly prejudice the parties and fail to serve the interests of judicial economy.

### Procedural Posture

Locus purchased communications services during the tax periods at issue, viz., 2001 through the first quarter of 2005, (the "Claims Period"). Throughout the Claims Periods, Locus paid the federal excise tax (FET) on the services it purchased and did not pass it on to its customers in the prices Locus charged them. Because Locus bore the economic burden of the FET by itself paying the FET, Locus filed for the refund of taxes it had paid and when not awarded the refund by the IRS, on November 9, 2005 filed its first complaint in this Court to recover the refund due it. *See Locus Telecommunications, Inc. v. United States*, 1:05-cv-01184 T

RHH.[1]

Over the two-plus years the Cases have been pending, Locus and the United States engaged in settlement efforts that included copious submissions by Locus of documents and affidavits that supported the fact that Locus had borne the economic burden of the FET and was entitled to its refund. In addition, based on these Locus submissions, Defendant IRS was able to institute its administrative processes to settle the vast majority of Locus' refund claim.[2]

On July 28 and August 1, 2008, Locus and the United States notified the Court that while a significant portion of the claims in the Cases have been settled, the parties did not reach a resolution on the remaining portion. However, with respect to the remaining refund claims,[3] Locus and the United States have narrowed the issues to (1) whether Locus has through its submission shown by a preponderance of evidence that it bore the economic burden of the tax and (2) if Locus has met its burden or proof, nonetheless, whether under Section 6415 of the Internal Revenue Code Locus is entitled to the refund on the basis that it bore the economic burden. Accordingly, the parties agreed to proceed by submitting cross-motions for summary judgment with respect to these two remaining issues.[4]

---

[1] For reasons not relevant here, Locus amended its original complaint limiting its claims for refunds to the 2001-2003 periods of the Claims Period and on April 4, 2006 filed a second complaint to cover the 2004 and first quarter 2005 periods of the Claims Period, *Locus Telecommunications, Inc. v. United States*, 1:06-cv-00277 T VJW (the "Cases"). On August 6, 2008, Case No. 1:06-cv-0277T VJW was transferred by Order and reassigned to Senior Judge Robert H. Hodges, Jr.

[2] As of December 2007, the IRS refunded $14,723,329.98, plus $2,658,632.13 in interest to Locus.

[3] Locus' original claim totaled $17,898,889.32. With the refunds and credits awarded by Defendant IRS, the balance of Locus's claim is $3,175,559.44. This amount was adjusted by $25,316.25 to reflect credits the IRS had given during the 2001-2003 portion of the Claims Period that were inadvertently overlooked, so the correct balance is $3,150,243.18.

[4] On aforementioned dates of July 28 and August 1, 2008, the parties notified the Court that Locus will file its opening Motion for Summary Judgment on September 15, 2008.

On July 15, 2008, KDI filed a Motion to Intervene in these Cases. Locus and the United States opposed. On August 15, 2008, KDI filed its Reply to Locus' and the United States' Oppositions. Attached to its Reply as Exhibits were KDI's Complaint and Motion to Consolidate. KDI's counsel did not serve counsel for Locus or the United States with the Complaint or Motion to Consolidate.[5] Locus now moves the Court to deny KDI's Motion to Consolidate.

## Argument

KDI's Motion should be denied because consolidating its complaint at this late date is prejudicial to Locus and the United States. For example, it is well established that consolidation is not proper if it results in increasing its opponent's cost of its pending litigation due to having to engage in extraneous discovery and/or collateral proceedings not relevant to the opponent's case. *In re Repetitive Stress Injury Litig.*, 11 F.3d 368, 373 (2d Cir. 1993) (noting that "[t]he systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's and defendant's cause not be lost in the shadow of a towering mass litigation.") *Id.* at 374; *see also,* WRIGHT & MILLER, 9A Fed. Prac. & Proc. Civ.2d § 2383, Consolidation (2008):

> [t]he mere fact that a common question is present, and that consolidation therefore is permissible under Rule 42(a), does not mean that the trial court judge must order consolidation. As the many cases on the subject make clear, there are many reasons why a district judge may deny a request for the consolidation of separate cases. For example, a motion under Rule 42(a) may be denied if the common issue is not central to the resolution of the cases, or if consolidation will cause delay in the processing of one or more of the individual cases, or will lead to confusion or prejudice in the effective management or trial of one or more of the cases. *Id.* (internal citations omitted).

In addition, the district court may deny consolidation based on the status of discovery. Usually, such denial is based on the fact that in the action in which consolidation is sought discovery has

[5] KDI's Complaint and Motion to Consolidate were filed with the Court on July 31, 2008.

proceeded further than discovery in the action to be consolidated. *Id.* Here, formal discovery to the extent pursued occurred over two years ago. In KDI's complaint action, the time has not yet run even under Rule 26 as to voluntary disclosures and no other discovery can be initiated until well after the summary judgment filings are made by the parties.

Although the Cases KDI seeks to consolidate have been pending for over two years, KDI has not until a few short weeks ago made any attempt to participate in these cases. Yet it has been fully aware of Locus' intent to seek the refund and based on that awareness consented in writing to Locus' doing so.[6] It was also aware in July 2007 that the IRS had initiated its administrative process to grant Locus its requested refunds.[7] And although it notified the IRS that it was "revoking" its consent that Locus obtains the refund, it took no further action in regard to these Cases.[8] In these circumstances, KDI's consolidation would be disruptive of prompt adjudication of the Locus' rights, would prejudice the Defendants by having to deal with collateral issues rather than the two important issues the cross-motions for summary judgment will address.

But this is not all. KDI's consolidation would be the antithesis of judicial economy. Locus' claim of economic burden is mutually exclusive of KDI's claim. If Locus proves by a preponderance of the evidence, evidence it has already submitted to Defendants, that it paid the FET, KDI's claim that it paid the FET is without merit. If KDI did not in fact pay the tax, it has no right to a refund and therefore no standing to seek one. *See, e.g., Ellison v. United States,* 558 F.Supp. 158 (W.D. Mo. 1982). Further, if it is established then that Locus bore the economic

---

[6] *See* Locus' Opposition to KDI's Motion to Intervene at Exhibit A.

[7] *See* KDI's Reply to Locus' Opposition and the Government's Response to KDI's Motion to Intervene ("KDI's Reply") at Attachment B.

[8] Demonstrating that KDI's intervention and consolidation of its complaint would introduce collateral issues, KDI argues that there was no consideration for the consent KDI provided to Locus. *See* KDI's Reply at 8.

burden but it is shown that even so Locus is not entitled to the refund under the statute, KDI's claim that it paid the FET is equally without basis. To consolidate KDI's Complaint with Locus' long pending action simply cannot be justified. On the contrary, consolidation would be detrimental to both Locus and the United States and to this court's efficient administration of its caseload.[9]

KDI's Motion introduces another collateral issue. KDI's Motion is based on its allegation that its Complaint and Locus' are directly related because they "are based on the same … claims." KDI asserts that it is owed a refund of the federal excise taxes based on its self-serving claim that KDI is the "first non-carrier" in the chain of distribution and thus is the only taxpayer entitled to the refund.[10] This assertion is without merit. It is simply contrary to fact and law.

KDI applied for and holds a certificate as a common carrier from the Federal Communications Commission ("FCC"). A print out of FCC's Web Site listings of registered carries (the FCC's CORES system), dated August 21, 2008 shows that KDI was granted a 214 certificate on October 19, 2001 and is registered as a carrier with the FCC. *See* CORES print out attached hereto as Exhibit A. At all times relevant hereto, KDI is a "carrier".

KDI's status as a carrier does not rest solely on its own actions acknowledging its regulatory obligations as such by complying with the FCC's certification and registration

---

[9] The court may take judicial notice that the United States has 60 days to file a responsive pleading to KDI's Complaint. This due date falls after the September 15, 2008 date on which Locus is to file its Motion for Summary Judgment. Locus' papers will contain testimony, documents and legal arguments that will establish it paid the FET on the services it provided KDI as it did with its other 18 customers that granted their consents to Locus recovery of the refunds and did not attempt to "revoke" them. Since Locus is confident that its summary judgment papers will show by a preponderance of the evidence that it bore the economic burden, KDI's standing will be proven to be non-existent and dismissal of its Complaint will be mandated.

[10] KDI Motion at 1-2.

process. Its status as a carrier arises by settled principles of law. A common carrier obtains its status as a result of how it operates. *Nat'l Ass'n of Reg. Util. Comm'rs v. FCC,* 525 F.2d 630, 644 (D.C. Cir. 1976) (common carrier is common because of its functions rather than because it is declared to be so.) ("NARUC I"); *see United States v. Brooklyn Eastern Distr. Terminal,* 249 U.S. 296 (1919) ("Whether a carrier is a common carrier ... does not depend upon whether its charter declares it to be such, ... but upon what it does.").

Hence, not only is KDI's status as a carrier shown by its licensing and regulatory practices, but also by the manner in which KDI operates. In addition to its own recognition of its status as a carrier based on its FCC license and filings, its status arises from the long-established precedents that a carrier is a carrier by virtue of its operations, a status it cannot change simply by asserting another classification in order to justify its desire to obtain a refund. KDI did not purchase communications services, it purchased cards to resell to end users. By doing so, it is itself a carrier. KDI does not use the communications is purchases from Locus for its own communications needs. Rather, it purchases those services to resell to others, directly or through its agents, for others' communications purposes. As such, KDI's resale does not support its assertion that it is the first purchaser that is not a carrier.

Further, Section 153 of the Communications Act of 1934, 47 U.S.C. §153, as amended (1996) contains these definitions:

> (44) The term "telecommunications carrier" means any provider of telecommunications services … A telecommunications carrier shall be treated as a common carrier under this Act only to the extent that it is engaged in providing telecommunications services …
>
> (43) The term "telecommunications" means the transmission, between or among points specified by the user, of information of the user's choosing, without change in the form or content of the information as sent and received.

When KDI resells the ability to make calls using the cards it provides its customers it is providing telecommunications to them and as such is a telecommunications carrier. In short, KDI is a carrier by virtue of its operations, under both common law and statutory definition, and by its own actions in complying with FCC regulations applicable to common carriers of telecommunications services. The court need not involve itself with this collateral issue and will not if it denies KDI's Motion to Consolidate (and Motion to Intervene for that matter).

<u>Option</u>

Locus' right to the refund is based on having borne the economic burden and paid the taxes itself. During the two-plus year period of time when Locus and the United States have attempted to settle Locus' refund claims, Locus submitted substantiation to the Defendant consisting of documents and sworn certifications that supported the fact that it had paid all the FET covered by the claims period, had not passed the tax on to its customers, had therefore borne the economic burden of the tax and was entitled to a full refund of the FET paid during the Claims Period. Consolidation will unnecessarily interject extraneous issues that Locus and the United States have been attempting to resolve informally over the past two years. In those efforts, Locus has gone to great expense to produce documentary and sworn statements to meet its burden of proof that it has the right to the refund of the FET it paid on KDI's and all other customers' services.[11]

By Locus' showing that it bore the economic burden, it is impossible for KDI to present a plausible showing that it paid the FET and indeed it would require the dismissal of the Complaint. Even if it were established that Locus bore the economic burden but was not entitled

---

[11] On December 8, 2006 Locus submitted copious documents and sworn statements in support of its having paid the FET tax. On April 11, 2008, Locus submitted additional documents that provide, as will be shown in its Motion for Summary Judgment that will be filed September 15th, incontrovertible proof that it paid the FET.

to the refund under the statute, it defeats KDI's claim because if Locus bore the economic burden, KDI could not have paid the FET when it paid Locus for its services. Under the posture of the Cases as they stand now and the upcoming filing of summary judgment motions, allowing consolidation under these circumstances is highly prejudicial to the parties and completely at odds with the principal of judicial economy.

Based on the foregoing, Locus respectfully requests that KDI's Motion to Consolidate be denied. Such denial may be without prejudice. That is, after the Court decides the parties' cross-motions for summary judgment, if it is not established that Locus bore the economic burden, then KDI may refile its Complaint and Motion to Consolidate.

Respectfully submitted,
Locus Telecommunications, Inc.

Date: August 25, 2008

By ______________________
Charles H. Helein
Helein & Marashlian, LLC
Counsel of Record
1483 Chain Bridge Road, Suit 301
McLean, VA 22102
703-714-1301
chh@commlawgroup.com

# Exhibit
# A

# PUBLIC NOTICE

FEDERAL COMMUNICATIONS COMMISSION
445 12th STREET S.W.
WASHINGTON D.C. 20554

News media information 202-418-0500
Fax-On-Demand 202-418-2830; Internet: http://www.fcc.gov (or ftp.fcc.gov)
TTY (202) 418-2555

DA No. 01-2483

Report No. TEL-00455

Thursday October 25, 2001

## INTERNATIONAL AUTHORIZATIONS GRANTED

**Section 214 Applications (47 C.F.R. § 63.18); Cable Landing License Applications (47 C.F.R. § 1.767); Requests to Authorize Switched Services over Private Lines (47 C.F.R. § 63.16); Section 310(b)(4) Requests**

The following applications have been granted pursuant to the Commission's streamlined processing procedures set forth in Section 63.12 of the Commission's rules, 47 C.F.R. § 63.12, other provisions of the Commission's rules, or procedures set forth in an earlier public notice listing applications accepted for filing.

Unless otherwise noted, these grants authorize the applicants (1) to become a facilities-based international common carrier subject to 47 C.F.R. § 63.22; and/or (2) to become a resale-based international common carrier subject to 47 C.F.R. § 63.23; or (3) to exceed the 25 percent foreign ownership benchmark applicable to common carrier radio licensees under 47 U.S.C. § 310(b)(4). Grants under Section 63.16 and certain grants under Section 63.18 also authorize carriers generally to use their authorized private lines to provide switched services (ISR) between the United States and particular international points pursuant to 47 C.F.R. § 63.16. See also 47 C.F.R. §§ 63.22(e), 63.23(d).

This public notice serves as each newly authorized carrier's Section 214 certificate. It contains general and specific conditions, which are set forth below. Newly authorized carriers should carefully review the terms and conditions of their authorizations. These are set forth in detail below and in Sections 63.21, 63.22, and 63.23 of the Commission's rules, 47 C.F.R. §§ 63.21-.23. Failure to comply with general or specific conditions of an authorization, or with other relevant Commission rules and policies, could result in fines and forfeitures.

The Commission most recently amended its rules applicable to international telecommunications common carriers in 2000 Biennial Regulatory Review, Policy and Rules Concerning the International, Interexchange Marketplace, FCC 01-93, released, March 20, 2001, 66 Fed. Reg. 16874 (Mar. 28, 2001). See also IB Docket No. 97-142, Rules and Policies on Foreign Participation in the U.S. Telecommunications Market, Order on Reconsideration, 15 FCC Rcd 18158 (2000); IB Docket No. 98-118, Review of International Common Carrier Regulations, FCC 99-51, released March 23, 1999, 64 Fed. Reg. 19,057 (Apr. 19, 1999) and in IB Docket Nos. 98-148, 95-22, CC Docket No. 90-337 (Phase II), 1998 Biennial Regulatory Review - Reform of the International Settlements Policy and Associated Filing Requirements, FCC 99-73, released May 6, 1999, 64 Fed. Reg. 34, 734 (June 29, 1999). An updated version of Sections 63.09–.24 of the rules, and other related sections, is available at http://www.fcc.gov/ib/td/pf/telecomrules.html.

---

ITC-214-20010827-00496 EZ TEL USA, INC.

International Telecommunications Certificate

**Service(s):** Global or Limited Global Facilities-Based AND Resale Service

Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilities-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010917-00491** OPTIMATION SERVICES, INC.
International Telecommunications Certificate
**Service(s):** Global or Limited Global Resale Service
Grant of Authority Date of Action: 10/19/2001

Application for authority to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010919-00485** KROSSLAND COMMUNICATIONS INC.
International Telecommunications Certificate
**Service(s):** Global or Limited Global Facilities-Based Service, Global or Limited Global Resale Service
Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilities-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010921-00481** PRONET COMMUNICATIONS, INC.
International Telecommunications Certificate
**Service(s):** Global or Limited Global Facilities-Based Service, Global or Limited Global Resale Service
Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilities-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010921-00482** BUSINESS TECHNOLOGY SERVICES INC
International Telecommunications Certificate
**Service(s):** Global or Limited Global Facilities-Based Service
Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilities-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules.

---

**ITC-214-20010921-00492** EGIX, INC.
International Telecommunications Certificate
**Service(s):** Global or Limited Global Facilities-Based Service, Global or Limited Global Resale Service
Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a faciltiies-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010921-00493** EGIX NETWORK SERVICES, INC.
International Telecommunications Certificate
**Service(s):** Global or Limited Global Facilities-Based Service, Global or Limited Global Resale Service
Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilties-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010921-00498** ACCESSIP LLC
International Telecommunications Certificate
**Service(s):** Global or Limited Global Facilities-Based AND Resale Service
Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilities-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

---

**ITC-214-20010924-00499** TOTAL ACCESS, INC.

International Telecommunications Certificate

**Service(s):** Global or Limited Global Facilities-Based AND Resale Service

Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilities-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010926-00484** PREMIER COMMUNICATIONS INC.

International Telecommunications Certificate

**Service(s):** Global or Limited Global Resale Service

Grant of Authority Date of Action: 10/19/2001

Application for authority to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010926-00494** INTERNATIONAL SATELLITE SERVICES, INC. ( d/b/a CLA SATCOM )

International Telecommunications Certificate

**Service(s):** Global or Limited Global Resale Service

Grant of Authority Date of Action: 10/19/2001

Application for authority to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010926-00500** SAN DIEGO COMMUNICATIONS L.L.C.

International Telecommunications Certificate

**Service(s):** Global or Limited Global Facilities-Based AND Resale Service

Grant of Authority Date of Action: 10/19/2001

Application for authority to operate as a facilities-based carrier in accordance with the provisions of Section 63.18(e)(1) of the rules and also to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-214-20010928-00495** FONICA LLC ( d/b/a FONICA )

International Telecommunications Certificate

**Service(s):** Global or Limited Global Resale Service

Grant of Authority Date of Action: 10/19/2001

Application for authority to provide service in accordance with the provisions of Section 63.18(e)(2) of the rules.

---

**ITC-ASG-20010926-00502** MOTOROLA WORLDWIDE INFORMATION NETWORK SERVICES, INC.

Assignment

Grant of Authority Date of Action: 10/19/2001

**Current Licensee:** MOTOROLA WORLDWIDE INFORMATION NETWORK SERVICES, INC.

**FROM:** MOTOROLA WORLDWIDE INFORMATION NETWORK SERVICES, INC.

**TO:** GENERAL DYNAMICS SATELLITE COMMUNICATIONS SERVICES, INC.

Application for Consent to an Assignment of License from Motorola Worldwide Information Network Services, Inc. to General Dynamics Satellite Communications Services, Inc.

Previous File Number was ITC-98-589

---

---

**ITC-T/C-20010907-00497** TELENATIONAL COMMUNICATIONS, INC.

Transfer of Control

Grant of Authority Date of Action: 10/19/2001

**Current Licensee:** TELENATIONAL COMMUNICATIONS, INC.

**FROM:** WORLDPORT COMMUNICATIONS, INC

**TO:** APEX ACQUISITIONS, INC.

Application for Consent to Transfer Control of Telenational Communications, Inc. from WorldPort Communications, Inc. to APEX Acquisitions, Inc.

---

CONDITIONS APPLICABLE TO INTERNATIONAL SECTION 214 AUTHORIZATIONS

(1) These authorizations are subject to the Exclusion List for International Section 214 Authorizations, which identifies restrictions on providing service to particular countries or using particular facilities. The most recent Exclusion List is attached to this Public Notice. The list applies to all U.S. international carriers, including those that have previously received global or limited global Section 214 authority, whether by streamlined grant or specific written order. Carriers are advised that the attached Exclusion List is subject to amendment at any time pursuant to the procedures set forth in Streamlining the International Section 214 Authorization Process and Tariff Requirements, IB Docket No. 95-118, 11 FCC Rcd 12884 (1996), para. 18. A copy of the current Exclusion List will be maintained in the FCC Reference and Information Center and will be available at http://www.fcc.gov/ib/td/pf/exclusionlist.html. It also will be attached to each Public Notice that grants international Section 214 authority.

(2) The export of telecommunications services and related payments to countries that are subject to economic sanctions may be restricted. For information concerning current restrictions, call the Office of Foreign Assets Control, U.S. Department of the Treasury, (202) 622-2520.

(3) Carriers shall comply with the requirements of Section 63.11 of the Commission's rules, which requires notification by, and in certain circumstances prior notification by, U.S. carriers acquiring an affiliation with foreign carriers. A carrier that acquires an affiliation with a foreign carrier will be subject to possible reclassification as a dominant carrier on an affiliated route pursuant to the provisions of Section 63.10 of the rules. The Commission recently amended Section 63.11 of the rules in its Order on Reconsideration in IB Docket No. 97-142, 15 FCC Rcd 18158 (2000).

(4) Carriers shall comply with the Commission's International Settlements Policy and associated filing requirements contained in Sections 43.51 and 64.1001 of the Commission's Rules, 47 C.F.R. §§ 43.51, 64.1001. The Commission modified these requirements most recently in 2000 Biennial Regulatory Review, Policy and Rules Concerning the International, Interexchange Marketplace, FCC 01-93, released, March 20, 2001, 66 Fed. Reg. 16874 (Mar. 28, 2001). See also 1998 Biennial Regulatory Review - Reform of the International Settlements Policy and Associated Filing Requirements, IB Docket Nos. 98-148, 95-22, CC Docket No. 90-337 (Phase II), FCC 99-73 (rel. May 6, 1999). In addition, any carrier interconnecting private lines to the U.S. public switched network at its switch, including any switch in which the carrier obtains capacity either through lease or otherwise, shall file annually with the Chief, International Bureau, a certified statement containing, on a country-specific basis, the number and type (e.g., 64 kbps circuits) of private lines interconnected in such manner. The Commission will treat the country of origin information as confidential. Carriers need not file their contracts for interconnection unless the Commission specifically requests. Carriers shall file their annual report on February 1 (covering international private lines interconnected during the preceding January 1 to December 31 period) of each year. International private lines to countries for which the Commission has authorized the provision of switched basic services over private lines at any time during a particular reporting period are exempt from this requirement. See 47 C.F.R. § 43.51(d).

(5) Carriers authorized to provide private line service either on a facilities or resale basis are limited to the provision of such private line service only between the United States and those foreign points covered by their referenced applications for Section 214 authority. In addition, the carriers may not -- and their tariffs must state that their customers may not -- connect their private lines to the public switched network at either the U.S. or foreign end, or both, for the provision of international switched basic services, unless the Commission has authorized the provision of switched services over private lines to the particular country at the foreign end of the private line or the carrier is exchanging switched traffic with a foreign carrier that the Commission has determined lacks market power in the country at the foreign end of the private line. See 47 C.F.R. §§ 63.16, 63.22(e), 63.23(d). A foreign carrier lacks market power for purposes of this rule if it does not appear on the Commission list of foreign carriers that do not qualify for the presumption that they lack market power in particular foreign points. This list is available at http://www.fcc.gov/Bureaus/International/Public_Notices/1999/da990809.txt. See generally 1998 Biennial Regulatory Review - Reform of the International Settlements Policy and Associated Filing Requirements, IB Docket Nos. 98-148, 95-22, CC Docket No. 90-337 (Phase II), FCC 99-73 (rel. May 6, 1999), paras. 12-15, 102-109.

(6) The Commission has authorized the provision of switched basic services via facilities-based or resold private lines between the United States and the following foreign points: Sweden, Canada, New Zealand, the United Kingdom, Australia, The Netherlands, Luxembourg, Norway, Denmark, France, Germany, Belgium, Austria, Switzerland, Japan, Italy, Ireland, Hong Kong, Iceland, Spain, Finland, Israel, Singapore, Netherlands Antilles, Poland, Argentina, United Arab Emirates, Macau, Hungary, Philippines, Greece, Uruguay, Brunei, Trinidad & Tobago, Czech Republic, the Dominican Republic, Brazil, Botswana, Costa Rica, South Africa, Saint Lucia, Saint Kitts & Nevis, Saint Vincent, Antigua, Malaysia, Thailand, Belize, Panama, Guatemala, Venezuela, Bahrain, South Korea, Portugal, Cyprus, Slovak Republic and Slovenia.

(7) Carriers may engage in "switched hubbing" to countries for which the Commission has not authorized the provision of switched basic services over private lines consistent with Section 63.17(b) of the rules.

(8) Carriers may provide U.S. inbound or outbound switched basic service via their authorized private lines extending between or among the United States, Sweden, New Zealand, the United Kingdom, Australia, The Netherlands, Luxembourg, Norway, Denmark, France, Germany, Belgium, Austria, Switzerland, Japan, Italy, Ireland, Hong Kong, Iceland, Spain, Finland, Israel, Singapore, Netherlands Antilles, Poland, Argentina, United Arab Emirates, Macau, Hungary, Philippines, Greece, Uruguay, Brunei, Trinidad & Tobago, Czech Republic, the Dominican Republic, Brazil, Botswana, Costa Rica, South Africa, Saint Lucia, Saint Kitts & Nevis, Saint Vincent, Antigua, Malaysia, Thailand, Belize, Panama, Guatemala, Venezuela, Bahrain, South Korea, Portugal, Cyprus, Slovak Republic and Slovenia.

(9) Carriers shall comply with the "No Special Concessions" rule, Section 63.14, 47 C.F.R. § 63.14.

(10) Carriers regulated as dominant for the provision of a particular communications service on a particular route for any reason other than a foreign carrier affiliation under Section 63.10 of the rules shall file tariffs pursuant to Section 203 of the Communications Act, as amended, 47 U.S.C. § 203, and Part 61 of the Commission's Rules, 47 C.F.R. Part 61. Except as specified in Section 20.15 with respect to commercial mobile radio service providers, carriers regulated as non-dominant, as defined in Section 61.3, and providing detariffed international services pursuant to Section 61.19 must comply with all applicable public disclosure and maintenance of information requirements in Sections 42.10 and 42.11. These non-dominant carriers may continue filing new or revised international tariffs for mass market services until January 28, 2002, when all tariffs, with limited exceptions, must be cancelled. Carriers may not file any new or revised contract tariffs or tariffs for other long-term international service arrangements. See 2000 Biennial Regulatory Review, Policy and Rules Concerning the International, Interexchange Marketplace, FCC 01-93, released March 20, 2001, 66 Fed. Reg. 16874 (Mar. 28, 2001).

(11) Carriers shall file the annual reports of overseas telecommunications traffic required by Section 43.61(a). Carriers shall also file the quarterly reports required by Section 43.61 in the circumstances specified in paragraphs (b) and (c) of that Section.

(12) Carriers shall file annual reports of circuit status and/or circuit additions in accordance with the requirements set forth in Rules for Filing of International Circuit Status Reports, CC Docket No. 93-157, Report and Order, 10 FCC Rcd 8605 (1995). See 47 C.F.R. §§ 43.82, 63.23(e). These requirements apply to facilities-based carriers and private line resellers, respectively.

(13) Carriers should consult Section 63.19 of the rules when contemplating a discontinuance, reduction or impairment of service. Further, the grant of these applications shall not be construed to include authorization for the transmission of money in connection with the services the applicants have been given authority to provide. The transmission of money is not considered to be a common carrier service.

(14) If any carrier is reselling service obtained pursuant to a contract with another carrier, the services obtained by contract shall be made generally available by the underlying carrier to similarly situated customers at the same terms, conditions and rates. 47 U.S.C. § 203.

(15) To the extent that any of the above-listed applicants intends to provide international call-back services through the use of uncompleted call signaling, its authorization to resell international switched voice and/or data services to provide these services is expressly subject to the conditions listed in VIA USA Ltd., et al., 9 FCC Rcd 2288 (1994), on recon., 10 FCC Rcd 9540 (1995).

(16) To the extent the applicant is, or is affiliated with, an incumbent independent local exchange carrier, as those terms are defined in Section 64.1902 of the rules, it shall provide the authorized services in compliance with the requirements of Section 64.1903. See Regulatory Treatment of LEC Provision of Interexchange Services Originating in the LEC's Local Exchange Area and Policy and Rules Concerning the Interstate, Interexchange Marketplace, Second Report and Order in CC Docket No. 96-149 and Third Report and Order in CC Docket No. 96-61, 12 FCC Rcd 15756, recon., 12 FCC Rcd 8730 (1997), Order, 13 FCC Rcd 6427 (Com. Car. Bur. 1998), further recon., FCC 99-103 (rel. June 30, 1999).

(17) Except as otherwise ordered by the Commission, a carrier authorized here to provide facilities-based service that (i) is classified as dominant under Section 63.10 of the rules for the provision of such service on a particular route and (ii) is affiliated with a carrier that collects settlement payments for terminating U.S. international switched traffic at the foreign end of that route may not provide facilities-based service on that route unless the current rates the affiliate charges U.S. international carrier to terminate traffic are at or below the Commission's relevant benchmark adopted in International Settlement Rates, IB Docket No. 96-261, Report and Order, 12 FCC Rcd 19806 (1997). See also Report and Order on

Reconsideration and Order Lifting Stay in IB Docket No. 96-261, FCC 99-124 (rel. June 11, 1999). For the purposes of this rule, "affiliation" and "foreign carrier" are defined in Section 63.09.

Petitions for reconsideration under Section 1.106 or applications for review under Section 1.115 of the Commission's rules in regard to the grant of any of these applications may be filed within thirty days of this public notice (see Section 1.4(b)(2)).

For additional information, please contact the FCC Reference and Information Center, Room CY-A257, 445 12th Street SW, Washington, D.C. 20554, (202) 418-0270.

Exclusion List for International Section 214 Authorizations

-- Last Modified December 22, 1999 --

The following is a list of countries and facilities not covered by grant of global Section 214 authority under Section 63.18(e)(1) of the Commission's Rules, 47 C.F.R. § 63.18(e)(1). In addition, the facilities listed shall not be used by U.S. carriers authorized under Section 63.18 of the Commission's Rules unless the carrier's Section 214 authorization specifically lists the facility. Carriers desiring to serve countries or use facilities listed as excluded hereon shall file a separate Section 214 application pursuant to Section 63.18(e)(4) of the Commission's Rules. See generally 47 C.F.R. § 63.22.

Countries:

Cuba (Applications for service to Cuba shall comply with the separate filing requirements of the Commission's Public Notice Report No. I-6831, dated July 27, 1993, "FCC to Accept Applications for Service to Cuba.")

Facilities:

All non-U.S.-licensed satellite systems that are not on the Permitted Space Station List, maintained at http://www.fcc.gov/ib/srd/se/permitted.html. See International Bureau Public Notice, DA 99-2844 (rel. Dec. 17, 1999).

This list is subject to change by the Commission when the public interest requires. Before amending the list, the Commission will first issue a public notice giving affected parties the opportunity for comment and hearing on the proposed changes. The Commission may then release an order amending the exclusion list. This list also is subject to change upon issuance of an
Executive Order. See Streamlining the Section 214 Authorization Process and Tariff Requirements, IB Docket No. 95-118, FCC 96-79, 11 FCC Rcd 12,884, released March 13, 1996 (61 Fed. Reg. 15,724, April 9, 1996). A current version of this list is maintained at http://www.fcc.gov/ib/td/pf/telecomrules.html#exclusionlist.

For additional information, contact the International Bureau's Telecommunications Division, Policy & Facilities Branch, (202) 418-1460.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| KDI DISTRIBUTION, INC. | ) | |
| Plaintiff, | ) | Case No. 08-550T |
| v. | ) | Judge Robert H. Hodges, Jr. |
| THE UNITED STATES | ) | |
| Defendant. | ) | |

**ORDER**

This matter came before the Court this ___ day of ____________2008 upon KDI Distribution, Inc.'s Motion To Consolidate. After consideration of the parties' arguments the Court finds consolidation is not warranted.

IT IS THEREFORE ORDERED THAT KDI Distribution, Inc.'s Motion To Consolidate is denied.

IT IS SO ORDERED.

_______________________
Judge Robert H. Hodges, Jr.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| KDI DISTRIBUTION, INC. | ) | |
| Plaintiff, | ) | Case No. 08-550T |
| v. | ) | Judge Robert H. Hodges, Jr. |
| UNITED STATES | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 25, 2008, I electronically filed Locus Telecommunications, Inc.'s **Memorandum In Opposition To KDI Distribution, Inc.'s Motion To Consolidate** with the Clerk of the Court using the ECF system which will send notification of such filing to the following attorneys of record:

G. Robson Stewart
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
202-307-6493

Henry D. Levine
Stephen J. Rosen
Levine, Blaszak, Block and Boothby, LLP
2001 L Street, NW, Suite 900
Washington, DC 20036
202-857-2550

Charles H. Helein
Helein & Marashlian, LLC
Counsel of Record
1483 Chain Bridge Road, Suit 301
McLean, VA 22102
703-714-1301
chh@commlawgroup.com